UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABBVIE INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>NOVARTIS VACCINES AND DIAGNOSTICS, INC., et al.,<br><br>    Defendants. | Case No. 17-cv-01815-EMC<br><br>**REDACTED/PUBLIC VERSION**<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br><br>Docket No. 48 |

Plaintiff AbbVie Inc. has filed suit against Defendants Novartis Vaccines and Diagnostics, Inc. and Grifols Worldwide Operations Ltd. AbbVie seeks a declaratory judgment that certain patents owned by Novartis, or co-owned by Novartis and Grifols, are invalid.[1] Currently pending before the Court is Novartis's motion to compel arbitration. According to Novartis, arbitration should be compelled because the parties' predecessors entered into a license agreement regarding the patents at issue (AbbVie's predecessor became a licensee of Novartis's predecessor) and that agreement contains an arbitration clause providing that disputes related to the agreement shall be arbitrated. AbbVie disagrees. According to AbbVie, the license agreement expressly carves out patent validity disputes from arbitration.

Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** the motion to compel arbitration.

## I. FACTUAL & PROCEDURAL BACKGROUND

In March 2002, Novartis's and AbbVie's predecessors (Chiron Corporation and Abbott Laboratories, respectively), entered into a license agreement. *See* Gaede Decl., Ex. A (license

---

[1] The patents at issue relate to the hepatitis C virus ("HCV").

agreement). The license agreement is governed by California law. *See* Lic. Agmt. § 9.7 (providing that the agreement "shall be governed by and shall be construed in accordance with the laws of the State of California without regard to the conflicts of laws provisions thereof").

Under the agreement, Chiron gave Abbott and its affiliates a license to use certain Chiron processes – referred to in the agreement as "Licensed Processes" – in exchange for ▇▇▇▇▇▇. *See, e.g.*, Lic. Agmt. § 2.2 (granting a nonexclusive, ▇▇▇▇▇▇ license "under the Licensed Processes . . . to make, have made, keep, use, offer to sell, and sell any and all Identified Products derived or resulting, indirectly or directly, from the Licensed Processes"). "Licensed Processes" is defined as "any process that involves the use, practice or manufacture of a Licensed Composition and/or Licensed Method." Lic. Agmt. § 1.13. In turn, "Licensed Composition" and "Licensed Method" are defined (in essence) as compositions or methods that are covered by valid patent claims. More specifically:

- "Licensed Composition" is defined as "any composition, the making, using, selling, keeping, offering for sale, importing or exporting thereof would, but for the license granted herein infringe any Valid Claim within Chiron Patent Rights." Lic. Agmt. § 1.11.
- Similarly, "License Method" is defined as "any method or process, the practice of which would, but for the license granted herein, infringe a Valid Claim of the Chiron Patent Rights, (including, without limitation, the manufacture, use, sale, keeping, offer for sale, important or exportation of a product which would infringe any such Valid Claim)." Lic. Agmt. § 1.12.

"Valid Claim" is defined in § 1.25 of the license agreement as "any claim of an issued (or granted) and unexpired patent which has *not been held unenforceable, unpatentable or invalid by a decision of a court or governmental agency of competent jurisdiction*." Lic. Agmt. § 1.25 (emphasis added).

The license agreement between Chiron and Abbott contains, *inter alia*, an arbitration clause to cover certain disputes between the companies. The arbitration clause can be found in two different places: § 9.8 of the agreement and Exhibit 9.8 of the agreement.

- Section 9.8 of the agreement specifies: "If the parties are unable to resolve *any dispute*

*regarding this Agreement*, then the terms of Exhibit 9.8 hereto shall apply." Lic. Agmt. § 9.8 (emphasis added added).

- Exhibit 9.8, in turn, provides: "The parties recognize that *a bona fide dispute as to certain matters* may arise from time to time during the term of this Agreement *which relates to either party's rights and/or obligations*. To have such a dispute resolved by this Alternative Dispute Resolution ("ADR") provision, a party must send written notice of the dispute to the other party . . . ." Lic. Agmt., Ex. 9.8 (emphasis added).

Based on the broad terms of § 9.8 and Exhibit 9.8, Novartis argues that the dispute between the parties regarding the validity of its patents should be arbitrated. AbbVie disagrees, taking the position that § 1.25 of the agreement effectively carves out patent validity disputes from arbitration.

## II. DISCUSSION

A. Parties' Arguments

The parties agree that the Federal Arbitration Act ("FAA") is applicable in the instant case. Under the FAA, "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2.

In the instant case, AbbVie does not argue that there are grounds to revoke the contract containing the arbitration agreement. Instead, AbbVie argues that there is a gateway issue of arbitrability for the Court to decide – more specifically, "whether an arbitration clause in a concededly binding contract applies to a given controversy." *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011); *see also Martin v. Yasuda*, 829 F.3d 1118, 1123 (9th Cir. 2016). As noted above, AbbVie contends that, based on the "Valid Claim" provision, the parties agreed to carve out from arbitration disputes related to patent validity.

In response, Novartis argues that, against the backdrop of

> the FAA, the strong federal policy in favor of arbitration, the presumption of arbitrability, the powerful Supreme Court cases interpreting the FAA, the explicit statute authorizing arbitration of

3

> validity disputes arising out of license agreements [35 U.S.C. § 294[2]][,] if the parties had wished to exclude disputes regarding patent validity from the scope of the arbitration provisions in the License Agreement, they would have had to have done so explicitly.

Mot. at 17. According to Novartis, the parties would have included an exclusion-from-arbitration clause within the broader arbitration clause itself if that was what was intended. *See, e.g.*, *Verinata Health, Inc. v. Ariosa, Inc.*, 830 F.3d 1335, 1337 (Fed. Cir. 2016) (indicating that the arbitration clause and exclusion-from-arbitration clause were within the same section or generally so). Novartis continues: "Against the backdrop of well-established arbitrability law, the notion that two sophisticated parties like Chiron and Abbott *agreed* to exclude validity disputes from arbitration obliquely through a definition of Valid Claim is unsustainable." Mot. at 19 (emphasis in original). Novartis reconciles the "Valid Claim" provision by arguing that it "is most naturally read to refer to challenges *by third parties* which result 'in a decision of a court or government agency' that a claim is invalid." Mot. at 20 (emphasis in original). "[V]alidity challenges *by AbbVie* are [still] to be decided in arbitration," although there could still be "judicial confirmation [of an arbitrator's decision on validity] in any proceeding[] involving Novartis and AbbVie." Mot. at 20 (emphasis in original).

B. <u>Ambiguity</u>

Resolution of the arbitration motion ultimately turns on whether the plain language of the license agreement is clear or ambiguous. If there is ambiguity in the agreement, then Novartis should prevail because, as the Ninth Circuit has explained,

> "where the contract contains an arbitration clause, there is a presumption of arbitrability." "[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an

---

[2] Section 294(a) provides:

> A contract involving a patent or any right under a patent may contain a provision requiring arbitration of any dispute relating to patent validity or infringement arising under the contract. . . . Any such provision or agreement shall be valid, irrevocable, and enforceable, except for any grounds that exist at law or in equity for revocation of a contract.

35 U.S.C. § 294(a).

4

> interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."
>
> . . . .
>
> Under California contract law,[3] "if the language [of a contract] is *clear and explicit*, and does not involve an absurdity" the language must govern the contract's interpretation. Moreover, when a contract is written, "the intention of the parties is to be ascertained from the writing alone, if possible." "[I]f reasonably practicable" a contract must be interpreted as a whole, "so as to give effect to every part, . . . each clause helping to interpret the other." *However, "[i]f a contract is capable of two different reasonable interpretations, the contract is ambiguous," and under the federal presumption in favor of arbitration, an arbitrator would have jurisdiction to arbitrate claims.*

*Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1284-85 (9th Cir. 2009) (emphasis added; citing, *inter alia*, *AT&T Techs., Inc. v. Commc's Workers of Am.*, 475 U.S. 643, 650 (1986)). In short, ambiguity in a contract under California law – *i.e.*, where there are two reasonable interpretations – must be resolved in favor of arbitration under federal law.[4]

*Comedy Club* is an instructive example of how ambiguity in a contract, as determined under applicable state law (California), must be resolved in favor of arbitration under the FAA. The plaintiff in *Comedy Club* had entered into a trademark license agreement with the defendant (*e.g.*, to use the "Improv" mark). Under the agreement, the plaintiff had an exclusive nationwide license to use the defendant's trademarks in connection with the opening of new comedy clubs. *See id.* at 1281. The agreement contained an arbitration clause which provided in relevant part as follows:

> "All disputes relating to or arising under this Agreement or the Asset Purchase Agreement shall be resolved by arbitration . . . . Notwithstanding this agreement to arbitrate, the parties, in addition to arbitration, shall be entitled to pursue equitable remedies and agree that the state and federal courts shall have exclusive jurisdiction for such purpose and for the purpose of compelling arbitration and/or enforcing any arbitration award."

---

[3] As noted above, the license agreement in the instant case is governed by California law.

[4] At the hearing, AbbVie admitted that no court has held that a patent case is outside the framework established by *AT&T* – *i.e.*, that there is a presumption of arbitrability where an agreement contains an arbitration clause and arbitration should be compelled "'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Comedy Club*, 553 F.3d at 1284 (quoting *AT&T*, 475 U.S. at 650).

5

*Id.* at 1181-82.

After the plaintiff breached the agreement (by failing to open new comedy clubs), the defendant sent the plaintiff a letter stating that the plaintiff was in default and that the defendant was withdrawing the license to use the defendant's trademarks. In response to the letter, the plaintiff filed an action for declaratory relief only. The defendant responded by filing a demand for arbitration, seeking damages. *See id.* at 1282.

The district court issued an order compelling the parties to arbitrate. On appeal, the plaintiff's first argument was that the district court had erred in compelling arbitration. The Ninth Circuit held that it lacked jurisdiction to hear that part of the plaintiff's appeal because it was not timely made. *See id.* at 1284. Confronted with this problem, the plaintiff argued next that the district court had erred in later confirming the arbitration award. According to the plaintiff, the arbitrator lacked authority to arbitrate the equitable claims. *See id.* In support of this position, the plaintiff pointed to the provision in the parties' agreement that, "'[n]otwithstanding this agreement to arbitrate, the parties, in addition to arbitration, shall be entitled to pursue equitable remedies and agree that *the state and federal courts shall have exclusive jurisdiction for such purpose* and for the purpose of compelling arbitration and/or enforcing any arbitration award.'" *Id.* at 1281-82 (emphasis added). The plaintiff asserted that this provision "is explicit that only state and federal courts, and not an arbitrator, have jurisdiction over equitable claims." *Id.* at 1285.

The defendant argued in response that the provision "only carved out equitable claims 'in aid of arbitration' to maintain the status quo between the parties pending arbitration." *Id.* In other words, the authority of the arbitrator to decide all disputes under the parties' agreement was not "'supplant[ed].'" *Id.*

Applying California law on interpretation of contracts, the Ninth Circuit held that the defendant's interpretation of the provision was plausible. It began by noting that

> [t]here are three relevant clauses in the arbitration agreement: (1) "[a]ll disputes relating to or arising under this Agreement . . . shall be resolved by arbitration"; (2) "[n]otwithstanding this agreement to arbitrate, the parties, in addition to arbitration, shall be entitled to pursue equitable remedies and agree that the state and federal courts shall have exclusive jurisdiction for such purpose and for the purpose of compelling arbitration and/or enforcing any arbitration

6

> award"; and (3) "[t]he prevailing party in any arbitration or action to enforce this Agreement . . . shall be entitled to its costs, including reasonable attorneys fees."

*Id.* The court continued:

> A natural reading of clause two lends plausibility to [the defense] theory. The language "in addition to arbitration" in clause two suggests that arbitration still applies to all disputes, but that in addition, the parties are "entitled to pursue equitable remedies" before courts. *If the parties intended to carve out an exception to arbitration for all equitable claims, they could have done so without the language "in addition to arbitration."* Because the parties included this language, it is plausible and a permissible contract interpretation that the equitable claims exception in clause two was intended to apply only to claims designed to maintain the status quo between the parties. Stated another way, it was a rational interpretation of the agreement to say that the arbitrator could decide both equitable and legal claims and that the provision for court jurisdiction on equitable matters was ancillary to the arbitration. Moreover, the Federal Arbitration Act provides a court with the ability to stay "trial of [an] action until such arbitration has been had," but it does not give a court the authority to issue equitable remedies, such as a temporary injunction, to maintain the status quo between the parties. Thus, it makes sense that if the parties wanted to give themselves the ability to seek temporary equitable remedies in courts while arbitration was ongoing, they would add such a clause to the arbitration agreement.
>
> To support its [contrary] interpretation, [the plaintiff] cites language in clause three that awards costs and attorneys fees to "the prevailing party in any arbitration or action to enforce this Agreement," and phrasing in clause two that grants exclusive jurisdiction to courts for the "purpose" of "equitable remedies." *These phrases, although consistent with [the plaintiff's] reading of the arbitration agreement, are equally consistent with [the defendant's] interpretation.* These phrases can support that the arbitration agreement lets the parties pursue equitable remedies in courts in aid of the arbitration, and gives those courts exclusive jurisdiction over, and awards costs and attorneys fees to the prevailing party in, those actions.
>
> We conclude that the arbitration agreement is "capable of two different reasonable interpretations." Under the federal presumption in favor of arbitration, because the arbitration agreement is ambiguous, it should be interpreted as granting arbitration coverage over "all disputes" arising from the Trademark Agreement.

*Id.* at 1285-86 (emphasis added); *see also NetJets Ass'n of Shared Aircraft Pilots v. NetJets Aviation, Inc.*, 601 Fed. Appx. 408, 411 (6th Cir. 2015) (stating that, "[a]lthough the arbitration provision in the [collective bargaining agreement] by its terms applies only to crewmembers, and the CBA defines crewmembers as non-management pilots, several other provisions of the CBA

7

unambiguously treat management pilots as crewmembers, making it plausible that management pilots are crewmembers for purposes of the arbitration provision as well[;] [t]herefore, the arbitration provision is susceptible of an interpretation that covers [the employee's] grievance").

C. Parties' License Agreement is Ambiguous

The instant case, like *Comedy Club*, involves contract interpretation under California law. Under California law, whether there is an ambiguity in a contract (*i.e.*, whether an ambiguity exists) is a question of law for a court to decide. *See Wolf v. Superior Court*, 114 Cal. App. 4th 1343, 1351 (2004). Here, the parties' license agreement is reasonably susceptible to the interpretation advanced by Novartis, and thus the agreement is ambiguous.

As noted above, the wording of § 9.8 and Exhibit 9.8 is broad. There is no exception to adjudication of validity as opposed to infringement – § 9.8 of the agreement covers "any dispute regarding this Agreement" and Exhibit 9.8 "a bona fide dispute . . . which relates to either party's rights and/or obligations." Neither § 9.8 nor Exhibit 9.8 refers to or adopts § 1.25's definition of "Valid Claim." As Novartis argues, based on the backdrop of arbitration law favoring arbitration, it would be odd for the parties to bury an exclusion-from-arbitration provision in the introductory definitions section of the license agreement and not refer to it in the arbitration clause if an exclusion from arbitration were so intended. While cross referencing could have accomplished such result – *e.g.*, where the arbitration provision states that certain "Disputes" will be arbitrated and "Disputes" is then defined in a different section on definition – the arbitration provisions of § 9.8 and Exhibit 9.8 do not incorporate the definition of "Valid Claim" in § 1.25 of the agreement.

AbbVie criticizes Novartis's position because (1) Novartis does not offer any extrinsic evidence (other than the general backdrop of arbitration law) to support its interpretation, (2) nothing requires an exclusion-from-arbitration provision to be in any specific location, and (3) Novartis does not adequately explain how the "Valid Claim" provision can be reconciled. None of these arguments is persuasive. While, under California law, a party may offer extrinsic evidence to establish ambiguity, a party is not required to do so. *See Wolf*, 114 Cal. App. 4th at 1350. Notably, AbbVie did not proffer any extrinsic evidence supporting its position either. And even though an exclusion-from-arbitration provision need not be in any specific place (*e.g.*, a part of the

8

arbitration provision), the fact that the placement was in the definitions section and not in the arbitration clause here nevertheless favors Novartis's interpretation of the agreement. "If the parties [had] intended to carve out an exception to arbitration for all [patent disputes], they could have done so" more clearly, certainly without embedding the alleged exclusion within a definitional provision. *Comedy Club*, 553 F.3d at 1285.

Furthermore, the "Valid Claim" provision may be reconciled with Novartis's interpretation of § 9.8 and Exhibit 9.8. "Valid Claim" is defined in the parties' license agreement as "any claim of an issued (or granted) and unexpired patent which has not been held unenforceable, unpatentable or invalid by a decision of a court or governmental agency of competent jurisdiction." Lic. Agmt. § 1.25. In other words, a patent claim is valid (and therefore a license is required for the patent claim) so long as a court or agency has not *previously* determined the claim to be invalid. *See* Chicago Manual of Style Online § 5.126 (stating that "[t]he present perfect tense is formed by using *have* or *has* with the principal verb's past participle {have walked} {has drunk}. It denotes an act, state, or condition that is now completed or continues up to the present {I have put away the clothes} {it has been a long day}."), *available at* http://www.chicagomanualofstyle.org/16/ch05/ch05_sec126.html?sessionId=85221a53-88ff-4a0a-b655-9ecc86b83200 (last visited August 30, 2017). Once a court or agency has determined that a patent claim is invalid, then there is no longer any need for AbbVie to have a license with respect to the claim and ▮▮▮▮▮ under the license agreement. Thus, for example, if a third party challenged patent validity in a lawsuit, and a court ruled in the third party's favor finding the patent claim invalid, the patent claim would no longer be a "Valid Claim" under the agreement, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Even if validity were adjudicated in arbitration as Novartis suggests, a finding of invalidity still could be given effect consistent with § 1.25. If the arbitrator ruled in AbbVie's favor and found a patent claim invalid, AbbVie could seek confirmation of the arbitrator's invalidity ruling with a court. Section 8.3(a) of the parties' license agreement provides that, "[i]n the event ADR is initiated . . . and the Neutral . . . has rendered a ruling that a party has materially breached this Agreement," then the nonbreaching party has the right to pursue "enforcement of the [Neutral's]

9

Ruling in a court of competent jurisdiction." Lic. Agmt. § 8.3(a)(iii)(1)-(3). Upon judicial confirmation, the patent claim would no longer be a "Valid Claim" under the agreement. Hence, the definition of "Valid Claim" in § 1.25 accommodates not only third-party court challenges to validity, but also the possibility of a direct challenge to validity in arbitration as between the parties. Accordingly, Novartis's interpretation of the arbitration clauses in § 9.8 and Exhibit 9.8 is consistent with § 1.25.

AbbVie protests that, nevertheless, Novartis's position should be rejected because a New York district court has interpreted a similar Abbott contract in the same way that AbbVie proposes here:

> [T]he Defendant argues that any dispute is subject to the mandatory arbitration provision. (Def. Br. 12-14.) The mandatory arbitration provision governs disputes "arising under or regarding the interpretation of [the sublicensing] Agreement" (Maldonado Decl. Ex. 2 ¶ 9.12), not patent validity. The sublicensing agreement contains a separate provision stating that the enforceability or validity of a patent is subject to a holding 'by a governmental agency or a court of competent jurisdiction.' (*Id.* ¶ 1.11.) The sublicensing agreement here contemplates that challenges to a patent's validity will be raised before a governmental agency or a court of competent jurisdiction, not an arbitration panel. Arbitration assumes patent validity and resolves disputes concerning the interpretation of the sublicensing agreement. The Court finds that the arbitration provision does not weigh against the Court's exercise of jurisdiction in this action.

*Abbott Labs. v. Mathilda & Terence Kennedy Inst. of Rheumatology Tr.*, No. 11 Civ. 2541 (PAC), 2011 U.S. Dist. LEXIS 158511, at *12 (S.D.N.Y. Oct. 14, 2011). But *Abbott* is not binding authority on this Court. In any event, it is not clear from the opinion that the parties in the case argued ambiguity. The court did not apply California law in determining whether there was an ambiguity sufficient to invoke the FAA presumption in favor of arbitration as in *Comedy Club*. In fact, it appears the agreement in *Abbott* was governed by New York law. *See Abbott Labs. v. The Mathilda & Terence Kennedy Inst. of Rheumatology* Trust, No. 1:11-cv-2541 (PAC) (S.D.N.Y.) (Docket No. 20-2) (Lic. Agmt. § 9.4).

Finally, AbbVie presents a public policy argument as to why patent validity should be adjudicated by a court, and not an arbitrator: "[P]ublic interest considerations further counsel litigation of patent validity. There is a 'strong federal policy favoring the full and free use of ideas

in the public domain,' counseling in favor of obtaining judgments that declare patents which should not have issued invalid." Opp'n at 17. An argument can be made that patent validity should not be reserved for private arbitration given the public nature of patents and what would seem to be an inherently sovereign function of determining the validity of patents. But in enacting § 294(a), Congress made clear that patent validity may be determined in arbitration if the parties so choose. See n.2 *supra*.

AbbVie acknowledges the existence of 35 U.S.C. § 294(a) but argues that, under the statute, "the FAA applies in the patent context only where the underlying agreement 'contain[s] a provision *requiring arbitration of any dispute relating to patent validity* or infringement arising under the contract.' . . . [¶] [H]ere, AbbVie and Novartis did not include 'a provision requiring arbitration of any dispute relating to patent validity.'" Opp'n at 17-18 (quoting § 294(a)[5]). While the Court is not without some sympathy for AbbVie's public policy argument, its argument begs the question. If, in the instant case, the arbitration provision is interpreted so as to cover adjudication of patent validity, the FAA applies. *Cf., e.g.*, *Rhone-Poulenc Specialties Chimiques v. SCM Corp.*, 769 F.2d 1569, 1571-72 (Fed. Cir. 1985) (holding that a patent infringement dispute was arbitrable based on a general arbitration provision covering "'[a]ny controversy or claim arising out of or relating to this Agreement or the breach thereof'"; stating that "the determination of the scope and infringement of the '485 patent are the quintessence of the [license] agreement and that the parties intended such central determinations to be included within the scope of its broad arbitration clause").

---

[5] The full text of § 294(a) is as follows:

> A contract involving a patent or any right under a patent may contain a provision requiring arbitration of any dispute relating to patent validity or infringement arising under the contract. In the absence of such a provision, the parties to an existing patent validity or infringement dispute may agree in writing to settle such dispute by arbitration. Any such provision or agreement shall be valid, irrevocable, and enforceable, except for any grounds that exist at law or in equity for revocation of a contract.

35 U.S.C. § 294.

11

### III. CONCLUSION

Novartis has provided a reasonable interpretation of the license agreement – *i.e.*, that patent validity is an issue to be arbitrated under the broad arbitration provision and there is no exclusion-from-arbitration provision for patent validity. The FAA's presumption in favor of arbitration, embodied in § 294(a), applies. Accordingly, Novartis's motion to compel arbitration is hereby granted. The Court stays proceedings in this case pending the arbitration. *See* 9 U.S.C. § 3.

This order disposes of Docket No. 48.

**IT IS SO ORDERED**.

Dated: August 31, 2017

_____
EDWARD M. CHEN
United States District Judge

12